FILED

2013 Sep-12  PM 02:20
U.S. DISTRICT COURT
N.D. OF ALABAMA



## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA

|  |  |  |
|---|---|---|
| John Doe, Jane Doe, James Doe, | * | |
| | * | |
| Plaintiffs, | * | Judge: |
| | * | |
| vs. | * | Case No: |
| | * | |
| TODD ENTREKIN, | * | |
| Sheriff of the Etowah County Sheriff's | * | |
| Office, in his individual and | * | |
| official capacity; Officer Victor Payne, in his | * | |
| individual capacity; Officer James Craig Tyler, | * | |
| in his individual capacity; | * | |
| | * | |
| Defendants. | * | |
| | * | |

---

# COMPLAINT

1

## INTRODUCTION

1.      The Etowah County Sheriff's Office operates a program of unannounced, random and suspicionless compliance investigations of every individual in the county who is subject to the registration requirements of the Alabama Sex Offender Registration and Community Notification Act.  Essential to the Sheriff's Office's program is that officers search the home of each registrant.   Officers must also question the registrant about his or her registration information.

2.      The Sheriff's Office conducts this program without regard to such factors as whether an individual was convicted as an adult or adjudicated as a juvenile; whether the individual presents a substantial risk of reoffending; whether the individual is on probation or parole; or whether the individual is fully compliant with his or her registration requirements. Under the Sheriff's Office's program, officers have unfettered discretion as to how often and when they conduct these unannounced inspections, so long as the officers make personal contact with every registrant at least once per month.

3.      Plaintiff James Doe is an Etowah County resident who, under the Act, is required to register as a juvenile.  To do so, he must appear in person at the office of Etowah County Sheriffs' Office four times per year.  Nonetheless, the Sheriff's Office has conducted at least nine separate inspections at James' home, where he resides with his parents, Plaintiffs John Doe and Jane Doe.  Sheriffs' Office officers routinely search Plaintiffs' home without consent during these inspections.   Officers also interrogate Plaintiffs about James' registration information. Defendants have threatened to arrest Plaintiffs if they fail to cooperate.

4.      Plaintiffs bring this action under 42 U.S.C. § 1983 to vindicate their rights under the Fourth and Fourteenth Amendments to the United States Constitution to be free from unreasonable searches and seizures and to not be deprived of liberty without due process of law.

2

Plaintiffs seek a declaration from this Court affirming that their rights have been violated, a permanent injunction against future compliance inspections without suspicion, and damages from Defendants in their individual capacities to compensate Plaintiffs for their unlawful treatment.

## JURISDICTION AND VENUE

5.      Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1343 because this is a civil action seeking redress for the deprivation of rights secured by the United States Constitution.

6.      Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202; Rules 57 and 65 of the Federal Rules of Civil Procedure; and the general legal and equitable powers of this Court.

7.      Venue is proper in the Northern District of Alabama pursuant to 28 U.S.C. § 1391(b), because this is the judicial district where the Defendants are located or reside, and it is the judicial district where a substantial portion of the events and omissions giving rise to this action occurred.

## PARTIES

8.      Plaintiff James Doe is a resident of Etowah County, Alabama.  He resides there with his parents, John Doe and Jane Doe, and his two minor siblings.  He is categorized as a "juvenile sex offender" under the Alabama Sex Offender Registration and Community Notification Act (the "Act" or "RCNA").  Ala. Code § 15-20A-4(12).  Following sex offender treatment, a risk assessment, and a full hearing pursuant to Section 15-20A-26 of the Code, the Etowah County Circuit Court determined that James' risk of re-offending is low.  Since April

2012, officers from the Etowah County Sheriff's Office have subjected James to random, suspicionless searches of his home without consent. The officers have also required James to submit to questioning about his registration status.

9.     Plaintiff John Doe is a resident of Etowah County, Alabama. He is the father of Plaintiff James Doe. Since April 2012, officers from the Etowah County Sheriff's Office have entered his home on numerous occasions without his consent. On many of these occasions, they searched his home without his consent. At least one of the officers has threatened to arrest John if he does not allow officers to enter and search.

10.     Plaintiff Jane Doe is a resident of Etowah County, Alabama. She is the mother of Plaintiff James Doe. Since April 2012, officers from the Etowah County Sheriff's Office have entered her home on numerous occasions without her consent. On many of those occasions, they searched her home without her consent.

11.     Defendant Todd Entrekin is the duly elected Sheriff of Etowah County and serves as the county's chief law enforcement officer. He has final policymaking authority for the Etowah County Sheriff's Office. He bears direct and ultimate responsibility for the Office's policies and practices at issue in this suit. He is sued in his individual and official capacities.

12.     Defendant Victor Payne is an officer in the Etowah County Sheriff's Office. He has conducted at least three compliance inspections at Plaintiffs' home. During at least one of these inspections, he also searched Plaintiffs' home without consent. Payne warned Plaintiffs that the Sheriff's Office required him to conduct the searches. For each visit, Payne instructed James Doe to provide registration and other information. He is sued in his individual capacity.

13.     Defendant James Craig Tyler is an officer in the Etowah County Sheriff's Office. He has conducted at least five compliance inspections at Plaintiffs' home. During three of these

inspections, he also searched Plaintiffs' home without consent.  Tyler threatened Plaintiffs with arrest if they refused a search.  On several occasions, Defendant Tyler instructed James Doe to provide his registration and other information.  He is sued in his individual capacity.

## FACTUAL BACKGROUND

*The Etowah County Sheriff's Compliance Sweeps of RCNA Registrants*

14.    The Etowah County Sheriff's Office has announced on its website that, along with registering and tracking all individuals in the county who are subject to the RCNA, its deputies and investigators conduct "random, monthly visits" to the home and work addresses of registrants. Ex. A (PDF of Etowah Sex Offender Site).

15.    These inspections are routinely conducted without a warrant and without any suspicion of criminal non-compliance with the RCNA.

16.    The primary purpose of the Etowah County Sheriff's Office's program is law enforcement.  The Sheriff's Office uses compliance inspections to identify and arrest individuals who are not compliant with RCNA requirements, or to make arrests for other crimes based on evidence an officer discovers during the inspection.

17.    To advance this law enforcement purpose, the Sheriff's Office has conducted at least one compliance sweep with a number of state and federal law enforcement agencies, including city and municipal police departments, the Alabama Bureau of Investigation, State Probation, the United States Marshals Service, the Federal Bureau of Investigation, and the Bureau of Alcohol, Tobacco, Firearms, and Explosives. Ex. B (Gadsen Times article).

18.    Defendant Entrekin has stated publicly that state law places no limit on how often his office can conduct compliance inspections.  (Ex. B).

5

19.     An important component of the compliance inspection is searching the home of each registrant to verify that he or she resides at the proper address and is not in violation of any other restrictions in the RCNA.  (Ex. B).

20.     Another key facet of the program is that registrants must complete a verification form with their registration information in the presence of an officer.  (Ex. B).

*James Doe's Juvenile Adjudication History*

21.     On August 17, 2011, Plaintiff James Doe was adjudicated delinquent in the Etowah County Circuit Court on three counts of first degree sexual abuse, Ala. Code § 13A-6-66(A), and one count of first degree sodomy, Ala. Code § 13A-6-63(A)(1).

22.     Forcible compulsion is a necessary element for each of James' adjudications.  On direct appeal, a unanimous Court of Criminal Appeals ("CCA") noted that, based on its review of the record, "the State may have failed to present evidence regarding forcible compulsion." The CCA nonetheless denied relief due to its conclusion that trial counsel failed to properly preserve this issue.

23.     The court committed James to the Alabama Department of Youth Services Sexual Offender Program, also on August 17, 2011.

24.     James completed the court-mandated treatment program at the Mt. Meigs Juvenile Detention Center on November 28, 2011.

25.     Prior to his release, the Etowah Circuit Court conducted a hearing on February 9, 2012, to assess both James' risk of re-offending and the level of notification to apply.  *See* Ala. Code § 15-20A-26.

26.     Over the State's objection, the court followed the recommendation of the Department of Youth Services that James should be assessed as a "low risk to reoffend sexually."

27.     Because James is a low-risk juvenile under the RCNA, the Act only permitted the Etowah County Sheriff's Office to notify the principal of the school that James attended after release.  Ala. Code. § 15-20A-27(b)(1).  The information included in the notification is strictly confidential, and the RCNA makes the direct or indirect disclosure of this information a Class A misdemeanor.  Ala. Code. § 15-20A-27(b)(1).

28.     The court did not order notification in James' case because he completed his G.E.D. at Mt. Meigs prior to release.

29.     The court ordered that James be placed on aftercare, that he report to a juvenile probation officer ("JPO"), and that he complete a counseling program approved by the JPO.

30.     Following his release on February 16, 2012, to the custody of his parents, James moved to his current residence in Etowah County.

31.     James completed aftercare and counseling in August of 2012.  He was fully compliant during this period.

*James Doe's Obligations under and Compliance with the RCNA*

32.     James' adjudications subject him to lifetime registration under the RCNA.  Ala. Code § 15-20-30(e).  He must appear in person every three months at the Etowah County Sheriff's Office to verify his registration, *id.*, or face a Class C felony conviction, Ala. Code §§ 15-20A-30(i).

33.     Unless James establishes a new residence or changes any of his required registration information, the RCNA imposes on him no further registration requirements.

7

34.     The RCNA contains no provision authorizing home inspections of registrants.

35.     James has fully complied with all requirements under the RCNA.

*Defendants' Warrantless, Suspicionless Searches and Inspections of Plaintiffs*

36.     At least nine times between April 2012 and August 2013, Defendants and other unidentified officers have appeared unannounced and uninvited at Plaintiffs' home and conducted inspections.

37.     On or about April 22, 2012, Defendant Victor Payne and an unidentified officer of the Etowah County Sheriff's Office visited Plaintiffs at their home for an unannounced compliance inspection.

38.     Payne was in full uniform and arrived in a marked Sheriff's Office vehicle.

39.      Payne demanded to come inside Plaintiffs' home to verify that James was in compliance with the RCNA.  Plaintiffs believed they had no choice but to allow Payne to enter.

40.     Payne entered Plaintiffs' home and searched the bedroom of James Doe.

41.     Defendant Payne also required James Doe to supply his registration information.

42.     On May 17, 2012, two unknown Etowah County Sheriff's Office officers conducted a compliance investigation as part of a sweep of every registrant in the county.  The search was carried out in conjunction with several state and federal law enforcement agencies. The officers were visibly armed and wearing bulletproof vests.

43.     James was not home at the time of the May inspection.  The officers instead questioned John and Jane Doe about James' registration information before leaving.

44.     Payne conducted additional visits on or about June 29, 2012, and July 29, 2012.

45.     On these latter occasions, Defendant Payne required James to come to his police car parked outside Plaintiffs' home to complete the inspection.

46.     Defendant James Craig Tyler conducted the next inspection in February 2013.

47.     Tyler arrived around 8:30 p.m. in full uniform and in a marked sheriff's vehicle.

48.     Defendant Tyler knocked loudly at the front door.   When Plaintiff John Doe answered, Defendant Tyler demanded to see Plaintiff James Doe, who then came to the door.

49.     Tyler proceeded to interrogate James Doe about his registration information.

50.     When he finished this questioning, Tyler demanded to enter the home to inspect James' room.  Without waiting for an answer, Tyler entered Plaintiffs' home.

51.     John Doe responded that Tyler did not have permission to enter.

52.     Tyler threatened that he would handcuff, arrest, and take John to jail for "concealing a sex offender" if John denied Tyler entrance.

53.     Tyler further threatened that, if John continued to resist, Tyler would make things hard on Plaintiffs by coming back to Plaintiffs' home every day.

54.      Intimidated by these threats, John contacted his attorney, Richard Jaffe.   Jaffe requested to speak with Tyler, but Tyler refused.

55.     Fearing that Tyler would make good on his threat to arrest Plaintiffs, Jaffe advised them to follow Tyler's orders.   On Jaffe's advice, Plaintiffs allowed Tyler to enter to avoid arrest.

56.     Defendant Tyler proceeded to James' bedroom and conducted a search.

57.     Tyler returned on an evening in March 2013.   All Plaintiffs were home at the time.

58.     Tyler first questioned James about his registration information.   He then entered the home without permission and searched James' bedroom and Plaintiffs' bathroom.

59.     Because of Defendant Tyler's previous threat to arrest Plaintiffs if they did not allow him inside the home, Plaintiffs were too scared to attempt to prevent Tyler's intrusion.

60.     On May 15, 2013, Defendant Tyler arrived at Plaintiffs' residence at approximately 6:30 p.m.  Plaintiffs Jane and James Doe were home, but Plaintiff John Doe was not home.

61.     Defendant Tyler entered Plaintiffs' home without asking or receiving permission. He proceeded to search James Doe's bedroom.

62.     Jane and James felt intimidated by Tyler based on his present and past behavior, and, therefore, they did not attempt to prevent Tyler's intrusion.

63.     Defendant Tyler came again to Plaintiffs' residence on June 12, 2013.  After learning that James was not home, he stated he would return later.

64.     Tyler returned the evening of June 18, 2013.  Scared, but frustrated by the constant invasions of his home, John Doe asserted that Tyler did not have permission to come inside.

65.     Tyler again threatened that he could make things hard on Plaintiffs by coming whenever he chooses if Plaintiffs did not allow him inside.

66.     Tyler also stated that he would go back to the Sheriff's Office, and the personnel there would do what was necessary to search the home.  Tyler then suggested that the Sheriff's Office would view as suspicious Plaintiffs' continued refusal to allow him inside.

67.     Tyler informed Plaintiffs that he was acting as instructed by the Sheriff's Office.

68.     Finally, Tyler threatened that someone from the Sheriff's Office would return at an unspecified date to conduct a search.  He then left.

69.     On July 25, 2013, Officer Tyler arrived unannounced for another inspection around 8:30 p.m.  John Doe informed Tyler that James Doe was showering.  Tyler responded that he would wait.

70.     Eventually James came out to the front porch to speak with Tyler, who demanded James' registration information and concluded the inspection.

71.     Plaintiffs have fully complied with the RCNA since James Doe's release.  None of Defendants' inspections have ever uncovered evidence of non-compliance or wrongdoing.

*Need for Injunctive Relief*

72.     Defendants have made it plain by their statements and conduct that they pursue a custom, policy, and practice of conducting random, suspicionless home inspections of all individuals registered under the RCNA who reside in Etowah County.  Further, Defendants have made clear that they believe there are no limits on how often they can conduct these inspections.

73.     As a direct and proximate result of Defendants' custom, policy, and practice of conducting compliance inspections – including the failure of Defendant Entrekin to train, supervise, and discipline adequately officers in the Sheriff's Office who repeatedly conduct compliance searches in a manner that violates the Fourth and Fourteenth Amendments to the United States Constitution – Plaintiffs live in constant fear that Defendants will unconstitutionally search their home or interrogate them at any time.  Plaintiffs also fear that Defendants will handcuff and arrest them if they refuse to cooperate with the inspections.

74.     The harm to Plaintiffs from the constant threat of coercive law enforcement actions that violate the Fourth and Fourteenth Amendments' guarantees against unreasonable searches and seizures, abusive deprivations of liberty, and deprivations of liberty without due

process can only be remedied fully through injunctive relief. There is no adequate remedy at law.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION: VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENT GUARANTEE AGAINST UNREASONABLE SEARCHES AND SEIZURES

**(All Plaintiffs against All Defendants)**

75.    Plaintiffs incorporate by reference all allegations made in the preceding paragraphs.

76.    The Fourth Amendment, as incorporated against the states by the Fourteenth Amendment, prohibits law enforcement officers from seizing an individual or conducting searches of an individual's home without a warrant and without suspicion.

77.    Defendants' policy and practice of randomly entering Plaintiffs' home and conducting searches under threat of arrest is not justified by any exception to the bedrock Fourth Amendment requirements of a warrant and individualized suspicion. The searches Defendants conduct are not separately authorized under the RCNA or any other provision of Alabama law.

78.    Defendants' policy and practice of seizing and requiring James Doe to submit his registration information to an officer during a home compliance inspection lacks any authority under the RCNA or any other provision of Alabama law. James is only required to register in person at the Sheriff's Office four times a year, and he has always complied with this requirement.

79.    Defendants' program of random, suspicionless compliance inspections, whose primary purpose is crime control, operates without any substantial and objective criteria to

constrain the discretion of officers and, therefore, violates clearly established Fourth Amendment law against unreasonable searches and seizures.

### SECOND CAUSE OF ACTION: VIOLATION OF THE FOURTEENTH AMENDMENT GUARANTEE OF SUBSTANTIVE DUE PROCESS

**(All Plaintiffs Against All Defendants)**

80.     Plaintiffs incorporate by reference all allegations made in the preceding paragraphs 1-74.

81.     The Fourteenth Amendment protects individual liberty against certain governmental intrusions irrespective of the fairness of the procedures utilized. This substantive guarantee is intended to prevent state actors from employing their power in an abusive or oppressive manner. A law enforcement agency therefore may not arbitrarily interfere with a person's fundamental privacy interest in being secure in his or her own home. A law enforcement agency also may not excessively encroach upon a person's fundamental liberty interest in being free from state supervision or inspection.

82.     Through its policy of conducting wholly discretionary, random, and suspicionless compliance inspections to interrogate James Doe and search Plaintiffs' home whenever Defendants choose, and by threatening James and his family with arrest for noncompliance, Defendants are subjecting James to a level of state supervision not authorized under the Constitution.

83.     Defendants' policy and practice of visiting Plaintiffs' home entirely at their discretion and questioning James Doe during compliance inspections lacks any authority under the RCNA or other provision of Alabama or federal law. James is only required to register in person at the Sheriff's Office four times a year, and he has always complied with this requirement.

84.    Because of James Doe's status as a "juvenile sex offender" who presents a low risk of reoffending, the RCNA requires that his notification information be kept strictly confidential.   Even indirect disclosure of a low-risk individual's status as a "juvenile sex offender" is a Class A misdemeanor under Alabama law, punishable by up to one year of imprisonment. Ala. Code. § 15-20A-27(b)(1); § 13A-5-7(a)(1).  Yet, by visiting Plaintiffs' home in marked cars and in full uniform, Defendants unduly risk communicating James' status under the RCNA to Plaintiffs' neighbors.  In the process, Defendants' stigmatize Plaintiffs in a manner entirely inconsistent with the RCNA's privacy protections. This harm is enhanced by the small size of their town and local media coverage documenting Defendants' conduct of compliance sweeps.

85.    Defendants, through their policy and practice of conducting wholly discretionary, random, and suspicionless compliance inspections of James Doe, have imposed penalties and regulations on Plaintiffs that arbitrarily deprive them of their fundamental interests in privacy and liberty.  These deprivations are not authorized by any duly enacted legislation in Alabama, nor are they otherwise sufficiently tailored to the state's interest in public safety, thus violating Plaintiffs' clearly established right to substantive due process.

### THIRD CAUSE OF ACTION: VIOLATION OF THE FOURTEENTH AMENDMENT GUARANTEE AGAINST DEPRIVATIONS OF LIBERTY WITHOUT DUE PROCESS

**(Plaintiff James Doe Against All Defendants)**

86.    Plaintiffs incorporate by reference all allegations made in the preceding paragraphs 1-74.  The Fourteenth Amendment prohibits a state from depriving an individual of liberty without due process of law.  Included within this protection are the rights to notice and a hearing when the state imposes penalties and regulations that burden fundamental liberty interests.  As

14

such, a law enforcement agency may not on its own initiative and without any authority under state law subject an individual to supervision and regulatory inspection without notice and an individualized hearing.

87.     Defendants have indiscriminately subjected every registrant in Etowah County to discretionary, random, and suspicionless compliance inspections at their homes and places of employment.  Defendants do not assess any potentially relevant factors in determining the appropriate level of inspection and supervision for a registrant, such as whether the registrant is classified as a "juvenile" or as an "adult" under the RCNA; whether the registrant is currently on probation or parole; whether a registrant presents a substantial risk of reoffending; or whether the registrant has previously violated the RCNA.

88.     James Doe is a juvenile under the RCNA who is not on probation or parole, has a low risk of reoffending, and has always remained compliant with the RCNA.

89.     In the absence of any state or federal law authorizing Defendants' purely discretionary inspection program, Defendants' failures to provide James with adequate notice of the law enforcement program, to conduct any level of individualized hearing before subjecting James to home inspections, to tailor the intrusiveness of the inspections based on an individualized assessment, or to provide a procedural mechanism whereby James may challenge his status under the program, violates James Doe's clearly established due process rights.


**RELIEF REQUESTED**

WHEREFORE, Plaintiffs respectfully request that this Court:

a. Enter a judgment declaring that Defendants' policy and practice of conducting random, suspicionless searches of the homes of all registered former offenders convicted of sex offenses, regardless of a registrant's probation or parole status, violates Plaintiffs' Fourth and Fourteenth Amendment right against unreasonable searches and seizures;

b. Enter a judgment declaring that Defendants Payne and Tyler violated Plaintiffs' clearly established Fourth and Fourteenth Amendment rights against unreasonable searches and seizures on each occasion that they conducted a search of Plaintiffs' home during a compliance inspection;

c. Enter a judgment declaring that Defendant Entrekin's policy and practice of having uniformed officers visit the homes of registered former offenders convicted of sex offenses and instructing those officers to require registrants to resubmit their registration information without suspicion of noncompliance, without any check on the individual officer's discretion, and without any authority under Alabama law violates Plaintiffs' Fourteenth Amendment right to substantive due process;

d. Enter a judgment declaring that Defendant Entrekin's policy and practice of subjecting registrants to this law enforcement program of random, suspicionless inspections without notice, without any individualized risk assessment, and without any opportunity for registrants to challenge their placement in the program violates Plaintiff James Doe's Fourteenth Amendment right to due process of law;

e. Issue a permanent injunction restraining Defendants from conducting suspicionless home compliance inspections of Plaintiffs;

    f.    Award damages to Plaintiffs against Defendants in their individual capacities to compensate them for the unreasonable searches and seizures they suffered; the stigma to which they were subjected by Defendants' repeated, unauthorized visits to Plaintiffs' home; and Plaintiffs' continuing fear of being unlawfully searched and seized, or subjected to public scorn, as a result of Defendants' actions, policies and practices;

    g.    Award costs and attorney's fees pursuant to 42 U.S.C. § 1988; and

    h.    Grant or award any other relief this Court deems just and proper.


Respectfully submitted,


/s/ Brandon J. Buskey* (ASB2753A50B)
Ezekiel Edwards*
American Civil Liberties Union
   Foundation
Criminal Law Reform Project
125 Broad Street, 18th Floor
New York, NY  10004
212-284-7364
bbuskey@aclu.org

/s/ Richard S. Jaffe
Michael Whisonant
Jaffe & Drennan, P.C.
2320 Arlington Ave S
Birmingham, AL  35205
205-930-9800
rjaffe@rjaffelaw.com


* Admission pending


/s/ Randall C. Marshall (ASB-3023-A56M)
ACLU of Alabama Foundation, Inc.
207 Montgomery Street, Suite 910
Montgomery, AL 36104-3535
rmarshall@aclualabama.org
(334) 265-2754


*Attorneys for Plaintiffs*

Dated:      SEPTEMBER 12, 2013

# EXHIBIT A



## ETOWAH COUNTY
# SHERIFF'S OFFICE
### SHERIFF TODD ENTREKIN

CONTACT US

| Sheriff | Detention | Administration | Enforcement | Investigations | Special Units | Public Info | Drug Enforcement Unit | Contact Us |

Links



## A MESSAGE FROM THE SHERIFF

This site is maintained as a public service for the citizens of Etowah County.  As Sheriff, it is my pleasure to serve you in this manner.  If you have any questions or suggestions, please feel free to contact us.



## Sex Offender Unit

The Etowah County Sheriff's Office Sex Offender Unit registers and tracks all criminal sex offenders who reside or work inside Etowah County.

Random, monthly visits are made, by Deputies and Investigators, to a criminal sex offender's registered home and work addresses.  This helps to ensure that individuals convicted of sex crimes are where they should be.

Investigators assigned to the Sex Offender unit also tracks offenders with a web-based software called Offender Watch.  This system provides offender registration, ongoing compliance management, and community notification.

All adult sex offenders who are subject to the Community Notification Act will appear on the website and public rosters, as well as, mail outs of information and photos to residents within 2000 square feet of the declared residence of adult criminal sex offenders.

The intent in imposing certain reporting and monitoring requirement on adult criminal sex offenders and requiring public notification of the residence and workplace of adult criminal sex offenders is to protect the public, especially children, from convicted adult criminal sex offenders.

## Quick Links

| MUGSHOTS | PISTOL PERMITS |
| SEARCH SEX OFFENDERS | INMATE / DETAINEE INFORMATION |

## MOST WANTED                    VIEW ALL >>

  

EMPLOYMENT

STUDENT LEADERSHIP ACADEMY

ETOWAH COUNTY
LAW ENFORCEMENT MEMORIAL

Etowah County Sheriff's Office - Sex Offender Unit

| ETOWAH SHERIFF'S CHARITIES |
| --- |

| SMARTPHONE APPLICATIONS |
| --- |

ADULT OFFENDER REQUIREMENTS

### Show Your Support

Like the Etowah County Sheriff's Office on
Facebook, Twitter and Google+

| 7 | 0 | 0 |
| --- | --- | --- |
| Like | Tweet | |

---

| Sheriff | Patrol | Public Information |
| --- | --- | --- |
| Detention | Investigation | Contact Us |
| Administration | D.E.U. | News |
| Special Units | Links | |

**Social Media**

    

---

Copyright 2012 Etowah County Sheriff's Office. All Rights Reserved. **Site Admin** | **Employees Only**

simplepixel

# EXHIBIT B

# The Gadsden Times

This copy is for your personal, noncommercial use only. You can order presentation-ready copies for distribution to your colleagues, clients or customers here or use the "Reprints" tool that appears above any article. Order a reprint of this article now.

## Authorities verify Etowah County sex offenders' residences

*By Lisa Rogers*
*Times Staff Writer*
*Published: Thursday, May 17, 2012 at 10:07 p.m.*

It's for the safety of the children.

Gadsden Police Chief John Crane said a sex-offender compliance check is an important measure in verifying the location of convicted sex offenders in Etowah County.

More than two dozen law enforcement officers from several agencies spent Wednesday and Thursday verifying the locations of 178 convicted sex offenders living in Etowah County.

Of the 178, only one was not verified.

"It's for the protection of the children," Crane said of the sex-offender checks. "We need to know who's out there and where they are at."



*Marc Golden | Gadsden Times*
Law enforcement officers from several local, state and federal agencies joined together Wednesday and Thursday for a sex offender verification roundup. Officers attempted to verify the home address of every registered sex offender in Etowah County. Here, police attempt to serve a warrant on a rape suspect Wednesday in Gadsden.



Crane said working with the different agencies, including the Etowah County Sheriff's Office, U.S. Marshals Service, Alabama Bureau of Investigation, FBI, ATF, state probation and several municipalities, makes an operation like this one successful.

"This is what can be accomplished when we work as a team," he said.

The officers worked in teams of two and filled out a verification form for each person registered in the county.

"This is the meat and potatoes of what we're doing," James Nolan, an agent with the U.S. Marshals Service, told the officers about the verification form as he explained the laws and the necessary paperwork required in the compliance checks.

"Slow down and think about what we're doing," he said. "If you make contact with the offender and they are in compliance, you are pretty much done."

He said if the sex offender is not home, it's important to determine where they are and if they really live at the address shown.

The mother of one convicted sex offender showed officers the room where he stays, and it is up to the officers to make a determination if the person really is living there or if the address was given as a ruse for the offender to stay somewhere else.

He said it's important for the officers to get a look inside the house.

"If they don't let you go in, there's probably something going on that they don't want you to know about," he said.

There also is a law which makes it a felony to harbor a sex offender.

He said even if all the sex offenders are found and verified, that does not mean they are in compliance, such as living in a house with children.

Of the 177 verified, 154 were in compliance and 23 were not.

Two offenders had died and three were in jail.

By Thursday afternoon, a few of the sex offenders verified were found not to be in compliance, Sheriff Todd Entrekin said.

He said the sheriff's office verifies the residence of registered sex offenders monthly, but the unified effort sends a strong message that sex offenders living in Etowah County must stay in compliance or pay the consequences.

"It's important to keep a close eye on sex offenders," Entrekin said.

In addition to the compliance checks, there were six additional arrests made during the two-day operation on charges of obstruction of justice, receiving stolen property, first-degree rape, unlawful possession of marijuana, possession of drug paraphernalia and possession of a weapon.

Sex offenders are required to register with the sheriff's office and local law enforcement agencies and identify the residence where they plan to live. The location has to be approved for someone to live there.

If they move, they must notify the agency they are registered with and make note of the chance and make sure any new location also can be approved.

Entrekin said he believes by checking the sex offenders more often, there will be more accountability.

"Nowhere in the law ... says we can check them too many times," he said.

Entrekin said most of the time, someone convicted of a sex crime against a child will re-offend.

That's why it is so important to keep track of convicted sex offenders, he said.

Adults, juveniles and those who have been given youthful offender status and are convicted sex offenders must register.

Websites show only adult convictions.

For more information about convicted sex offenders in Alabama, go to community.dps.alabama.gov. There also is information about sex offenders on the Etowah County Sheriff's Office website at www.etowahcountysheriff.com.

Copyright © 2013 GadsdenTimes.com — All rights reserved. Restricted use only.